# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:05cv209

| | |
|---|---|
| ACCU-ROUTER, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | MEMORANDUM AND ORDER |
| ) | |
| SHODA IRON WORKS CO., LTD., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the Court on the motion of Defendant Shoda Iron Works Co., Ltd., ("Shoda") to dismiss or transfer for improper venue (Doc. No. 5) pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a). Plaintiff Accu-Router, Inc. ("Accu-Router") filed a response (Doc. No. 13) in opposition to the motions. For the reasons stated below, the Court will **DENY** both motions.

**I.     BACKGROUND**

Plaintiff Accu-Router is a Tennessee corporation, with its principal place of business in Tennessee. (Doc. No. 1: Complaint). Defendant Shoda is a Japanese corporation with its principal place of business in Japan. Since June 29, 1994, Accu-Router has been the owner of the United States Patent Re. 34,125 ("the '125 patent") for a Roller Hold Down Device that holds a workpiece to a moving table and can be used in conjunction with a routing machine. On May 5, 2005, Accu-Router filed a complaint in this district under 35 U.S.C. § 271 and §§ 281-285 claiming that Shoda was infringing on the '125 patent by manufacturing, using, and/or selling the infringing products throughout the United States and in the Western District and by

importing infringing products into the United States. Accu-Router seeks injunctive relief as well as damages, interest, and attorney's fees and costs.

Shoda's only apparent contact with the state of North Carolina is through its sole customer in the state, Rieter Greensboro ("Rieter"), an independent distributor based in Greensboro in the Middle District of North Carolina. Some of the accused products are located in the Western District as a result of Rieter distributing the products to customers in the district. Shoda does not have any real estate, employ any representatives or agents, maintain any inventory, keep any business records, or have an office in the state. (Doc. No. 6: Declaration of Hiroshi Shoda). On March 13, 2006, Shoda filed a Motion to Dismiss for Improper Venue under Rule 12(b)(3) and 28 U.S.C. § 1406(a), asking this Court to either dismiss the case or transfer it to the Middle District of North Carolina. Shoda concedes that its contacts with the Middle District of North Carolina are sufficient for proper venue

On August 20, 2006, Accu-Router responded to the Motion to Dismiss or Transfer under Rule 12(b)(3) and 28 U.S.C. § 1406(a), claiming that Shoda's contact with customers in the Western District of North Carolina via Rieter are sufficient to make venue proper. Accu-Router asks that this Court find that venue is proper in the Western District of North Carolina or, in the alternative, transfer the case to the Middle District of North Carolina.

**II.    DISCUSSION**

When an objection to venue has been raised under Rule 12(b)(3), the burden is on the plaintiff to show that venue is proper in the respective judicial district. Bartholomew v. Va. Chiropractors Ass'n, Inc., 612 F.2d 812, 816 (4th Cir. 1979); Plant Genetic Systems, N.V. v. CIBA Seeds and Mycogen Plant Sci., Inc., 933 F. Supp. 519, 526 (M.D.N.C. 1996). The specific venue statute for patent infringement, 28 U.S.C. § 1400(b) (2006), states: "[a]ny civil

2

action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." Because Shoda does not have an established place of business in this district, proper venue depends on the meaning of "resides." The Federal Circuit has held that the correct definition for corporate residence is that found in § 1391(c): venue is proper wherever a specific judicial district has personal jurisdiction over a corporate defendant. VE Holding Corp. v. Johnson Gas Appliance Co., 917 F.2d 1574, 1584 (Fed. Cir. 1990); see also Plant Genetic Systems, N.V., 933 F. Supp. at 526.

The test for specific personal jurisdiction consists of two steps: whether the state long-arm statute is satisfied and if the state law confers jurisdiction, whether the court's exercise of jurisdiction satisfies the requirements of due process. Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945); Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found., 297 F.3d 1343, 1349-1350 (Fed. Cir. 2002). However, because the North Carolina long-arm statute, N.C. Gen. Stat. § 1-75.4 (West 2007), has been interpreted to "extend personal jurisdiction over non-resident defendants to the full extent permitted by the due process clause of the Constitution," the two inquiries collapse into a single due process analysis. Precept Med. Prods., Inc. v. Klus, 282 F. Supp. 2d 381, 384 (W.D.N.C. 2003).

The due process analysis of personal jurisdiction for patent cases depends on three factors: "1) whether the defendant 'purposefully directed' its activities at residents of the forum; 2) whether the claim 'arises out of or relates to' the defendant's activities with the forum, and 3) whether assertion of personal jurisdiction is 'reasonable and fair'." Silent Drive, Inc. v. Strong Indus., Inc., 326 F.3d 1194, 1202 (Fed. Cir. 2001) (quoting Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1360 (Fed. Cir. 2001)). The first two factors relate to the minimum contacts prong and the

3

third factor corresponds with the fair play and substantial justice prong of the International Shoe analysis. Id. at 1202. The burden to prove the basis for jurisdiction lies with the plaintiff, Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993); however, when jurisdiction is being challenged before a pretrial hearing, the plaintiff must only make a prima facie showing of jurisdiction and the court must construe all facts and inferences in favor of the plaintiff, Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). Moreover, once the first two prongs of the patent infringement personal jurisdiction test have been satisfied, the burden is on the defendant to make a compelling case that the third prong of the test is not met using the five factors discussed by the Supreme Court in Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985): burden on defendant, plaintiff's interest, forum's interest, interest of the several states, and interstate judicial system's interest in litigation in the forum. Breckenridge Pharm., Inc. v. Metabolite Labs., Inc., 444 F.3d 1356, 1363 (Fed. Cir. 2006).[1]

For the purposes of § 1391(c), when the defendant is a corporation and a state has more than one judicial district, the "corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." 28 U.S.C. § 1391(c) (2006). A non-resident defendant's purposeful shipment of accused products through an established distribution channel into the forum is usually enough to satisfy the minimum contacts analysis. Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1565 (Fed. Cir. 1996). Accu-Router has made a prima facie showing of jurisdiction by alleging that Shoda, through its distributor, sold accused machines to

---

[1] The cited cases for burden of proof in jurisdiction disputes involve 12(b)(2) motions for lack of jurisdiction over the person. However, since a 12(b)(3) motion for improper venue in a patent case switches to a jurisdictional analysis in relation to corporate residence, these cases are relevant to the analysis.

4

customers in the Western District of North Carolina. It was foreseeable that an ongoing relationship with a distributor in the Middle District of North Carolina would result in products reaching the Western District of North Carolina.

Shoda has not made an argument that jurisdiction in the Western District of North Carolina is unreasonable or unfair, but has instead focused solely on the minimum contacts prongs of the jurisdiction analysis. Analysis of the Burger King factors, however, actually weighs in favor of jurisdiction for this Court. Accu-Router has a high interest in litigating in the district that was the situs of the alleged patent infringement, and the Western District of North Carolina has a high interest in protecting its residents from purchasing infringing goods and regulating infringement occurring within its legal boundaries. The burden on Shoda, a Japanese corporation, in litigating in the Western District of North Carolina is likely great, but this burden is mitigated by the fact that Shoda has consented to venue in the Middle District of North Carolina. The Middle District would be an equally inconvenient forum since Shoda admits that it has no real estate, agents, or offices there. (Doc. No. 6: Declaration of Hiroshi Shoda). The final two Burger King factors – the interest of the several states and the interstate judicial system's interest – are not disputed here based on the recognized federal interest in protecting citizens and corporations from patent infringement.

### III. CONCLUSION

Venue in the Western District of North Carolina is proper because Accu-Router has made a prima facie showing that Shoda has minimum contacts with the district and Shoda failed to make a compelling argument that jurisdiction in the district would be unreasonable or unfair.

5

**IT IS, THEREFORE, ORDERED** that Shoda's Motion for Dismissal for Improper Venue and, in the alternative, to Transfer to the Middle District of North Carolina is **DENIED**.

Signed: June 6, 2007

Robert J. Conrad, Jr.
Chief United States District Judge